PAUL E. MANASIAN (130855)
GREGORY A. ROUGEAU (194437)
MANASIAN & ROUGEAU LLP
400 Montgomery Street, Suite 1000
San Francisco, CA 94104
Telephone: (415) 291-8425
Facsimile: (415) 291-8426
Email: manasian@mrlawsf.com
Email: rougeau@mrlawsf.com

Attorneys for SF MARKET INVESTMENT CO., LLC and MID-MARKET DEVELOPMENT COMPANY

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>973 MARKET ASSOCIATES, LLC<br><br>Debtor. | Case No. 09-32014 DM 11<br><br>Chapter 7<br><br>**JOINDER IN MOTION TO MODIFY PROTECTIVE ORDERS**<br><br>**Date: April 8, 2011**<br>**Time: 10:00 a.m.**<br>**Place: Courtroom 22** |

SF MARKET INVESTMENT CO., LLC ("SF MARKET"), a member and creditor of 973 MARKET ASSOCIATES, LLC (the "Debtor"), MID-MARKET DEVELOPMENT COMPANY ("MID-MARKET") and MICHAEL MURRAY (together with SF Market and Mid-Market, the "Murray Parties") hereby join the Motion to Modify Protective Orders (the "Motion") filed by Tony Manning.

The Court may recall that the Murray Parties stipulated to the protective orders with Performing Arts, LLC following hearings held by the Court on September 22 and 25, 2009 in

1

connection with the opposition of Performing Arts to the entry of an order for examination under Rule 2004 which was requested by the Murray Parties. The grounds for the opposition were that the requested documents did not relate to a relief from stay motion which Performing Arts had brought, and that some of the documents sought would be relevant to a state court action pending between the Debtor and the Murray Parties. At the hearing on September 22, 2009, the Court overruled the objection and entered the Rule 2004 order. Following the September 22, 2009 hearing, the Court held a telephonic hearing on September 25, 2009 at the request of Performing Arts.

At the telephonic hearing on September 22, 2009, counsel for Performing Arts argued that the requested production of documents was overbroad and that certain "confidential" information was being sought.[1] The **only** documents which Performing Arts was able to identify as being "confidential" were (ironically) the financial statements of the very guarantors whom Performing Arts is now suing. Performing Arts also objected that it should not be required to produce all of its communications with United Commercial Bank ("UCB"). In support of its objection to producing documents, Performing Arts complained that it was "afraid" of Mr. Murray, based upon the allegations which had been made against him in the litigation previously commenced against him by the Debtor. In response, the Murray Parties, through the undersigned counsel, agreed to the entry of a broad protective order simply to take these concerns (which were and are completely unfounded) off of the table. At no time did Performing Arts make any showing – or even representation – that the materials sought were proprietary or for some reason confidential and not discoverable.

Following the entry of the protective order, Performing Arts produced documents, including its communications with UCB. The undersigned counsel conducted the 2004

---

[1] The undersigned counsel has obtained and reviewed copies of the Court's audio recordings of the September 22 and 29, 2009 hearings. Copies will be made available to counsel for Performing Arts if they so request.

examination of Joseph Cassidy, the sole member of Performing Arts.[2]  Upon review of the documents and the examination of Mr. Cassidy, it became clear to the undersigned counsel why Performing Arts had so vigorously opposed the examination and production, and why Performing Arts had requested such a draconian protective order.  In a nutshell, and without revealing the contents of the documents or testimony which remain subject to the protective order, suffice it to say that the evidence obtained goes directly to the "unclean hands" defense asserted by the guarantors now being sued by Performing Arts.  Had the state court action on the guaranties been pending at the time the protective order was entered into, Performing Arts clearly would have had to provide the same evidence in that action,  However, the guaranty action was not filed and served until immediately prior to the 2004 examination.[3]

  Performing Arts is now taking the position in the state court that the evidence does not need to be produced in the guaranty action because it is subject to the protective order entered by this Court.[4]  The state court has deferred to this Court, as is not uncommon, on the assumption that this Court is more familiar with the issues concerning the protective order.  However, the protective order in this case was entered in a complete vacuum, based only upon a vague assertion that Performing Arts was "afraid" of Mr. Murray, when the Murray Parties had no idea who Performing Arts was and without any showing whatsoever by Performing Arts as to why the evidence should be subject to a protective order.  As a simple matter of expediency, the Murray Parties agreed to the protective order, as the evidence was sought in part to address a motion for relief from stay set to be heard in a matter of days.

---

[2] The Court may recall that for the first two months of this bankruptcy case, Performing Arts refused to reveal to anyone, the Court included, who the principals of Performing Arts were, notwithstanding that Performing Arts had filed a motion for relief from stay.

[3] In fact, counsel for Performing Arts served Mr. Murray with the complaint at the 2004 examination of Mr. Cassidy.

[4] Performing Arts also seems to take the position that Mr. Manning was not a "party" to the protective order and therefore has no standing to seek to modify it.  Although that argument seems to have little merit, it is mooted by the Murray Parties' joinder in the Motion, as the Murray Parties were clearly "parties" to the protective order.

3

Case: 09-32014   Doc# 160  JOINDER IN MOTION TO MODIFY PROTECTIVE ORDERS   Page 3 of 4
                           Filed: 04/04/11   Entered: 04/04/11 09:38:25

The evidence which the Murray Parties obtained from Performing Arts is just that: evidence. As this Court often notes, items obtained through discovery – including testimony and other evidence – do not "relate" to any particular proceeding but are simply evidence. Allowing Performing Arts to shield Mr. Cassidy's testimony and the documents produced by Performing Arts from use in a state court lawsuit in which those items are directly relevant would be a gross injustice, particularly as this Court was never presented with any grounds for shielding the evidence in question from disclosure.

The Murray parties respectfully submit that this Court should simply dissolve the protective order, and leave Performing Arts to its only appropriate remedy: to seek to convince the state court that the items in question should somehow be shielded form discovery or public disclosure in that action, a burden which the Murray Parties respectfully submit Performing Arts would never be able to meet under applicable state law.

DATED: April 4, 2011                                  MANASIAN & ROUGEAU, LLP

                                                      By:   */s/ Paul E. Manasian*
                                                            Paul E. Manasian
                                                            Attorneys for SF MARKET INVESTMENT
                                                            CO., LLC, MID-MARKET
                                                            DEVELOPMENT COMPANY, and
                                                            MICHAEL MURRAY